IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Doug Burton, in his capacity as executor
of the Estate of Marsha Burton,

        Plaintiff,

        vs.                      Case No. 13-2099-JTM

Blue Cross and Blue Shield of Kansas
City,

        Defendant.

MEMORANDUM AND ORDER

This is an action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, by Doug Burton, in his capacity as executor for the estate of his late wife Marsha, alleging that the defendant wrongfully denied benefits for radiation therapy treatments for his wife's cancer. Both parties have moved for summary judgment. The court finds that coverage for the particular radiation treatment at issue is excluded by both the explicit terms of the Health Plan administered by Blue Cross, and because the treatments were experimental or investigative procedures, as defined by the Plan.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable

doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In addition to the summary judgment motions, the plaintiff has also moved to strike the Declaration of Stacy Woods, which Blue Cross attached in support of its summary judgment motion, on the grounds that the document was not previously produced pursuant to Fed.R.Civ.Pr. 26(a)(1)(A)(ii). Alternatively, plaintiff requests permission to supplement the evidentiary record.

The Motion to Strike is denied. The submission of evidentiary declarations in support of summary judgment motions is explicitly authorized by Rule 56, and Ms. Woods was timely and explicitly identified by Blue Cross as a person with knowledge of the administrative process. The plaintiff has presented no authority suggesting the

2

requirement to timely disclose documents under Rule 26 somehow precludes a party from offering subsequently-obtained affidavits in support of a summary judgment motion.

Woods's affidavit references and explains the administrative record itself, and is properly before the court. Such evidence does not address the merits of Blue Cross's decision and is entirely appropriate for the purpose of explaining "the *manner* in which defendant made its decision." *Buchanan v. Reliance Standard Life Insurance*, 5 F.Supp. 1172, 1181 (D.Kan. 1998) (emphasis in original). See *also Niedens v. Continental Casualty*, No. 05-2176-CM, 2007 WL 956647, *4 (D.Kan. 2007) (affidavit permissible if it "explains how the plan administrator reached its decision"), *aff'd on other gds.*, 258 Fed.Appx. 216 (10th Cir. 2007).

Further, the court denies leave to supplement the record. The issue before the court is whether the administrator's decision was arbitrary and capricious, and accordingly the court looks only to the materials which were actually utilized in that decision. *Holcomb v. Unum Life Insurance*, 578 F.3d 1187, 1192 (10th Cir. 2009); *Fought v. Unum Life Insurance*, 379 F.3d 997, 1003 (10th Cir.2004). Supplementation is permissible only in "the unusual case," *Hall v. Unum Life Insurance*, 300 F.3d 1197, 1203 (10th Cir.2002). "The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir.2010). Here, the plaintiff has failed to meet the burden of demonstrating the appropriateness of such supplementation, and the request is accordingly denied.

### Findings of Fact

Doug Burton was employed by Westlake Hardware, Inc., and he and his wife, Marsha Burton (Burton), had health care benefits under the terms of the Health Plan during the period relevant to this case. Blue Cross is an insurer of the Westlake group health policy. The Health Plan at issue is an employee benefit "Plan" under ERISA as defined by

29 U.S.C. § 1002(1).  Marsha Burton was a "participant" of the Plan as defined by 29 U.S.C. § 1002(7).  The Plan authorizes Blue Cross as the claims administrator to determine eligibility for benefits under the Policy.

In 1990, Mrs. Burton was diagnosed with ovarian cancer. In 2008, her ovarian cancer metastasized to her liver and abdominal region.  In April, 2011, a CT scan revealed slightly larger lesions and new tiny mesenteric nodules on her liver.

Burton's physicians could not perform traditional radiation treatments, because of the sensitivity of the liver and the risk of damage to nearby healthy organs.

In May of 2011, Marsha Burton was examined by Dr. Ralph S. Wolfstein of the Elite Oncology Medical Group in Los Angeles, California. Dr. Wolfstein believed that intensity-modulated radiation therapy (IMRT) might help in Burton's treatment. IMRT involves the manipulation of radiation beams to conform to the shape of a tumor.

At some point in May, Burton submitted a pre-service claim for benefits to Blue Cross requesting coverage for the IMRT treatment.

Burton received IMRT treatments at Elite Oncology between May 23 and June 17, 2011. The results of the treatment appear mixed. It appears that the size of most of the liver tumors were reduced, but one lesion appeared to have become more metabolically active. Burton survived for one year following the treatment.

Section D of the Health Plan excludes services that are "Experimental or Investigative as determined by Us at Our Sole discretion." Section A of the Plan defines "Experimental/Investigative Services," and lists four bases for a service to be considered experimental or investigative. These include whether such determination is consistent with the Blue Cross and Blue Shield Association's uniform medical policy and if the local Medical Policy Committee, utilizing authoritative sources of information and expertise, determines that the service does not meet criteria set forth in the Health Plan, or that there

is not sufficient evidence-based peer reviewed studies to support the safety and efficacy of the service.

After reviewing the pre-service claim in mid-May 2011, Blue Cross claims review determined that IMRT is investigative for gynecological and abdominal cancers according to the IMRT Medical Policy and the terms of the Plan.

On June 16, 2011, one of Blue Cross Medical Directors, Dr. Loretta Britton, confirmed the reviewer's determination that IMRT for treatment of malignant neoplasm of ovary is investigative. Dr. Britton recommended denial of her claim because IMRT for Mrs. Burton is not a benefit under the Health Plan. On June 20, 2011, Blue Cross denied Burton's pre-treatment claim because the requested treatment is experimental/investigative and not covered by the Health Plan.

The notice stated:

> Your claim has been carefully processed according to the terms of your health plan. If you disagree with our decision, you may request a review of the claim. You must send a written request within 180 days of receiving this notice. You should explain why you disagree and you may provide additional information about the claim. You also have the right to request guidelines or rules we used in denying your claim.

The next day, Blue Cross received the first level post-service appeal request submitted by Burton's oncologist, Dr. Wolfstein, for claims related to IMRT. Dr. Wolfstein stated that Burton had received multiple treatments of hypothermia coupled with radiation therapy. He wrote that hypothermia in his opinion was "not unsafe, experimental or investigational," that it was supported in prior trials, and that it has been approved for reimbursement by Medicare and other Blue Cross entities. However, Dr. Wolfstein's letter appears to address the general status of hypothermia coupled with radiation therapy. It does not address whether IMRT is an accepted treatment for the specific illness suffered by Burton – ovarian and liver cancer.

One July 29, 2011, Blue Cross mailed a letter to Burton acknowledging its receipt of the appeal. It also asked her for any additional written comments, documents, or other

materials in support of her appeal. Blue Cross notified Burton on August 25, 2011 that her appeal was under review.

MES Solutions provides independent medical evaluation services, including peer review of physician recommended treatment and medical procedures, for providers of health care benefits including Blue Cross. Blue Cross asked MES to review Burton's appeal. MES instructed Blue Cross to send Burton's appeal of the denial of her claim to Dr. Robert Marciniak, who is board certified in Internal Medicine, with a sub-specialty certificate in Medical Oncology, and a claim reviewer for MES.

In August, 2011, Dr. Marciniak wrote that Mrs. Burton's requested treatment for ovarian cancer is considered an investigative treatment. He stated:

> Given the absence of any literature to support this use, the scientific evidence does not permit conclusions regarding the effect of this treatment on health outcomes. As such, it meets the plan definition of investigational. The requested treatment is not supported by the medical literature, and is investigational per the plan definition; the denial of coverage was made correctly.

After reviewing Dr. Marciniak's letter, Dr. Britton wrote a concurrence and recommended affirming denial.

In asking MES to review to claim, Blue Cross mistakenly gave Dr. Marciniak its Policy 8.01.46 (which applies to use of IMRT for treating breast and lung lesions), rather than 8.01.49 (which applies to cancer of the abdomen and pelvis). However, as noted in his report, Dr. Marciniak did not rely on Policy 8.01.46. He found that scientific evidence does not support the requested treatment, and that IMRT for Burton's condition is investigative per the Health Plan definition and that the denial of coverage was correct. This determination that IMRT for cancer of the ovary is investigative is consistent with the IMRT Medical Policy.

On August 31, 2011, Blue Cross denied Burton's appeal on the grounds that IMRT is experimental and not covered under the Health Plan.

On September 12, 2011, Blue Cross received a letter from Burton's legal counsel, Talia Ravis, asking for a copy of the appeal file.

On November 2, 2011, Blue Cross received a second level post-service appeal request by Dr. Wolfstein.

In support of her appeal, Burton included a letter from Dr. James Bicher of Elite Oncology. Bircher wrote that the treatments given Burton "resulted in promising good results." He wrote that IMRT is "not unsafe, experimental, or investigational," and noted that "Medicare pays for it, as do major insurance companies including Aetna, Cigna, United Health and many more." However, as with the earlier letter from Dr. Wolfstein, Bicher's letter did not address the particular application of IMRT to ovarian or liver cancer.

Blue Cross acknowledged the appeal on November 9, 2011, and proposed December 1, 2011, for the second level appeal panel hearing. Blue Cross again retained MES to process that appeal.

MES appointed Harold E. Kim, M.D., Board Certified in Radiology with subspecialty in Radiation Oncology, to serve as the lead reviewer in this appeal. In conducting his review, Dr. Kim consulted Burton's attending physicians, Drs. Birchner and Wolfstein, and two other MES peer Reviewers, Mohamedyakub Puthwala, M.D., who is Board Certified in Radiology and Radiation Oncology, and Kenneth Bastin, M.D., who is Board Certified in Radiology and Radiation Oncology.

On April 26, 2012, the denial of Burton's request for IMRT was reviewed by a Second Level Grievance Panel, consisting of five voting members, including the three MES physician reviewers, Robin Randal, a director-level Blue Cross representative; and Eugene Marti, a Blue Cross policyholder. After considering Burton's request and appeal, the Second Level Grievance Panel unanimously affirmed Blue Cross's denial of Burton's claim for IMRT under the Health Plan because the treatment is experimental/investigative within the terms of the Health Plan, and thus it was not covered by the Plan.

7

On April 27, 2012, Dr. Kim and the two other MES reviewers, Dr. Puthawala and Dr. Bastin, issued a *Peer Review Report* summarizing the findings of the MES reviewing physicians. Dr. Kim wrote in the Report:

> There are no published clinical outcome evidence (local control, survival, quality of life) on the IMRT of metastasis in the liver in the setting of progressive metastatic disease such as in the lung and peritoneum. With the lack of published clinical outcome data to support IMRT in this member's condition, the scientific evidence does not permit conclusions regarding the effect of IMRT on health outcomes. Therefore, the use of IMRT in this member's case meets criteria of investigational/experimental as defined by Blue KC.

Dr. Puthawala wrote:

> There are no studies demonstrating a better outcome for a widely metastatic disease by using IMRT. This use of IMRT for this patient's condition meets the definition as investigational/ experimental.

Dr. Bastin wrote:

> There are no high-grade evidence-based peer review studies published in the medical literature to support the safety and efficacy of the technology IMRT is a recognized treatment option for various cancer, including brain tumors and head/neck cancer. No evidence supports this technology use for the particular patient.

All three independent reviewing physicians determined that the proposed IMRT is investigative/experimental as defined by Blue Cross and that the treatment is not supported by medical literature, and affirmed Blue Cross's denial of Mrs. Burton's claim.

During the Second Level Grievance Panel, Ravis asked if Blue Cross would give the member a chance to appeal the denial, since the incorrect medical policy was utilized in the first level appeal review. Blue Cross informed Ravis that the matter would be reviewed. Following the Second Level Grievance Panel, on April 26, 2012, Blue Cross Medical Director Dr. Sitzmann reviewed the claim file and Ravis's correspondence to make sure that the denial of Mrs. Burton's claim for IMRT was correct under the Health Plan.

On May 3, 2012, Blue Cross notified Ravis that because it gave the first level reviewer, Dr. Marciniak, an inapplicable Blue Cross and Blue Shield Association IMRT

8

Medical Policy, that Mrs. Burton could have an additional seven days to submit additional information in support of her claim if she wished Blue Cross to conduct another review.

Thereafter, Blue Cross granted an additional thirty days to supply additional information per Ravis's request.

However, instead of asking for additional review and supplying more information, Ravis requested that Blue Cross reverse its denial of Burton's claim.

On June 5, 2012, Blue Cross informed Ravis that it would not conduct any further appeal of Mrs. Burton's claims.

Section D of the Health Plan sets forth the Exclusions and Limitations, including for services, supplies, equipment, and care that are "Experimental or Investigative as determined by Us [Blue Cross] at Our sole discretion." Section A defines a drug, device, or procedure as "Experimental/Investigative Services" if

a.   The drug or device cannot be lawfully marketed without approval of the United States Food and Drug Administration and approval for marketing has not been given at the time the drug or device is furnished; or

b.   Reliable evidence shows that the drug, device or medical treatment or procedure:

(1)   Is provided as part of a Phase I or Phase II clinical trial, as the experimental or research arm of a Phase III clinical trial, or in any other manner that is intended to evaluate the maximum tolerated dose, safety, toxicity, or efficacy as its objective;

(2)   Is provided pursuant to a written protocol or other document that lists an evaluation of its safety, toxicity, or efficacy as its objective; or

(3)   Is Experimental/Investigative per the informed consent document utilized with the drug, device or medical treatment; or

c.   The national Blue Cross and Blue Shield Association's uniform medical policy (as amended from time to time) has determined the device or medical treatment or procedure ("technology") is investigational based on the following criteria:

(1)   Final approval from the appropriate governmental regulatory bodies has not been received; or

(2)   Scientific evidence does not permit conclusions concerning the effect of the technology on health outcomes; or

(3)   The technology does not improve the net health outcome; or

9

(4)   The technology is not as beneficial as established alternatives; or

(5)   The improvement is not attainable outside the investigational settings; or

d.   To the extent paragraphs a., b., and c. above do not apply, Our local Medical Policy Committee, utilizing additional authoritative sources of information and expertise, has determined that the technology does not meet the criteria listed in paragraph c. 1-5 above or there is not sufficient evidence based peer reviewed studies published in medical literature to establish the safety and efficacy of the technology.

The IMRT Medical Policy in effect here explicitly states that IMRT is "considered investigational for the treatment of tumors" in the upper and lower abdomen, and the pelvis. The IMRT Medical Policy is reviewed on an annual basis and updated for current medical research (Blue Cross 0756-0766).

Blue Cross follows standard policies and procedures in administering benefit claims under its health insurance policies, and maintains the Blue Cross and Blue Shield of Kansas City Employee Handbook ("Employee Handbook"), which is updated from time to time. This Handbook provides that promotions are given on the basis of job performance criteria.

The Appeals Department of Blue Cross is responsible for overseeing insureds' benefit determination appeals. From time to time, this Department and the management of Blue Cross set performance goals for the Appeals Department. In "Appeals Department Goals & Roles – 2011," the goals of the Appeals Department include those for timeliness, accuracy, and quality of performance. These goals do not include a financial quota or a quota for appeals denials or approvals.

The procedure for conducting a Second-Level Grievance Panel review is set forth in Blue Cross's standard procedures for conducting second level appeals. A Second-Level Grievance Panel comprises five voting members:  (1) three outside physicians contracted by the appeals reviewer, (2) a Blue Cross director-level employee, and (3) a Blue Cross policy holder.

A director-level employee of Blue Cross serves on Second-Level Grievance Panels on a rotating basis as a part of employment duties with Blue Cross. Any such Blue Cross

employee receives no benefits of any kind for determinations made in Second-Level Grievance Panels.

Appeals of benefits decisions are governed by Blue Cross's Corporate Policies and Procedures Commercial Member Complaints and Grievances. These Policies and Procedures set forth an appeals process for all policy holders that meets applicable state and federal laws.

### Conclusions of Law

Where an ERISA health plan gives the administrator discretionary authority to interpret the plan or award benefits, the administrator's decision regarding a claim is reviewed under the deferential abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008); *Flinders v. Workforce Stabilization Plan*, 491 F.3d 1180, 1189 (10th Cir. 2007). The Tenth Circuit has noted that the arbitrary and capricious standard is "interchangeable" with abuse of discretion. *Weber*, 541 F.3d at 1010 n. 10. This standard "is a difficult one for a claimant to overcome." *Nance v. Sun Life Assur. Co. of Can.*, 294 F.3d 1263, 1269 (10th Cir. 2002).

Under this standard, the court looks to "whether the interpretation of the plan was reasonable and made in good faith." *Weber*, 541 F.3d at 1010 (quotation and citations omitted). The decision "will be upheld so long as it is predicated on a reasonable basis." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). A decision is not arbitrary and capricious if it is supported by substantial evidence, which is defined as proof of "the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance." *Id.* The "reviewing court 'need only assure that the administrator's decision falls somewhere on a continuum of reasonableness – even if on the low end.'" *Kimber v. Thiokol*

*Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir.1999).

If the plan administrator is also the insurer, it has a conflict of interest, and the court applies an modified abuse of discretion standard, examining a combination of factors, including this conflict of interest. See *Metropolitan Life Insurance v. Glen*, 128 S.Ct. 2343, 2350 (2008); *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1193 (10th Cir. 2009); *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 826-827 (10th Cir. 1996). The weight to be given the conflict depends upon its seriousness. *Foster v. PPG Industries*, 693 F.3d 1226, 1232 (10th Cir.2012). The conflict is given great weight where it likely affected the denial; it is less important or even unimportant where steps were taken to reduce potential bias and promote accuracy. *Id.*

In *Holcomb*, the court determined that the insurer-administrator had lessened the conflict by engaging additional medical reviewers, and thus did not "rely solely on the evaluations and medical opinions of its own on-site physicians and nurses." 578 F.3d at 1193. Such a conflict of interest is of limited weight where the administrator lacks any history of bias and employs an outside medical expert to review the claim. *See Hickman v. LSI Corp.*, 2012 WL 2505298 *3; No. 11–1039–JAR Dist. Kan. 2012).

The court finds that the plaintiff has failed to demonstrate an abuse of discretion in the denial of benefits for the IMRT treatments. The Health Plan expressly precludes coverage for "Experimental/Investigative" procedures. The Plan further provides that a treatment may be experimental or investigative if it falls within the defined list of exclusions in the "National Blue Cross and Blue Shield Association's uniform medical policy (as amended from time to time)." Here, both the National Blue Cross IMRT Medical Policy and the defendant's IMRT Medical Policy explicitly provide that IMRT is considered investigational for treatment of cancer in the abdomen and pelvis.

12

In addition, the Plan precludes coverage if there is "not sufficient evidence based peer reviewed studies published in medical literature to establish the safety and efficacy of the technology." Here, Blue Cross's determination was confirmed in two appeals, during which four peer review cancer specialists agreed that the treatment was experimental or investigative for Burton's ovarian and liver cancer. According to Dr. Bastin, there is "[n]o literature ... to support the use of IMRT in terms of efficacy for this patient's stage IV disease. The morbidity of IMRT for head/neck cancer has been widely reported, but no data can be found to support IMRT for abdominal and pelvic metastases sites."

Here plaintiff argues that the court should adopt a *de novo* review of the denial of benefits, because Blue Cross committed procedural errors in the review of Burton's claim. For example, the plaintiff faults the sufficiency of the notice provided by Blue Cross in its initial denial of the claim. The plaintiff further notes that Dr. Marciniak was initially presented with Blue Cross IMRT Policy 8.01.46 (which applies to radiotherapy of breast and lung lesions), rather than 8.01.49 (radiotherapy of the abdomen and pelvis). In addition, Dr. Marciniak's report mistakenly refers to Subsection (c)(2) of Section A's definition of experimental or investigative procedures, rather than Subsection (d).

The court finds that the denial of benefits is properly reviewed under the abuse of discretion standard, and that Blue Cross's decision does not violate this standard. First, the authority cited by plaintiff for *de novo* review, *LaAsmar v. Phelps Dodge Corp. Life Accid. Death & Dismem. Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) is inapposite. In that case, the plan administrator did not qualify for deferential review because it did not attempt any timely substantial compliance with plan procedures. This case is markedly different. Blue Cross timely corresponded with the claimant and counsel, and issued a decision within the controlling deadlines.

Second, the notice sent by Blue Cross stated that the claim was denied because "Experimental and Investigational services are not covered under the Member's plan."

Blue Cross substantially complied with the requirements of 29 C.F.R. § 2560.503-1(g) by informing Burton of the basis for the denial. That Burton understood the rationale for the denial is confirmed by her appeal, which sought to provide evidence in support of the validity and efficacy of IMRT treatment.

The errors in supplying the IMRT breast cancer policy to Dr. Marciniak, and his reference to Subsection (c)(2) rather than (d), also do not detract from Blue Cross's substantial compliance with ERISA procedures. Dr. Marciniak's conclusion did not rely on the breast cancer policy, and his key conclusion — that the medical literature provides no support for IMRT therapy for abdominal cancers — is appropriate under both subsections of the Plan. Because that conclusion is otherwise unchallenged in the administrative record (and was in fact confirmed by the subsequent three independent physician reviewers), Blue Cross did not act unreasonably in relying upon it.

Blue Cross complied with C.F.R. § 2560.503-1(h)(3)(iii), which requires that plan administrators consult with "a health care professional" with "appropriate training and experience" in conducting the appeal from the denial of benefits. Following the initial review of the claim by Dr. Britton, MES obtained the independent review of the claim by Dr. Marciniak, a physician board-certified in internal medicine with an subspecialty in medical oncology. Dr. Marciniak had the appropriate training and experience to review the claim denial for the treatment of Burton's ovarian and liver cancer.

The plaintiff complains that Blue Cross sought to get "another bite at the apple" by means of the second appeal, and rhetorically asks, if Blue Cross believed that Dr. Marciniak's findings supported the denial of benefits, then "why did [it] hire three new physicians to review the claim ...?" The answer is that Blue Cross was attempting to be as fair as possible to the claimant. Blue Cross substantially complied with ERISA standards and its own procedures. Further, it would hardly serve public policy to determine that the act of offering an *additional* appellate review of a claim denial is itself somehow evidence

14

of bias or bad faith. Such a conclusion would discourage administrators from undertaking additional review of claims denials, or from attempting to correct relatively minor procedural errors.

Here, the court finds no evidence of any bias or inappropriate actions by Blue Cross. Even as it acted as insurer and plan administrator, the plaintiff has not shown how any decision by Blue Cross was actually affected by any conflict of interest. The reviews – both those employed by Blue Cross and those independently obtained by MES – reached the same conclusion regarding the lack of studies supporting IMRT therapy for abdominal cancers. *See Healthcare America Plans, Inc. v. Bossemeyer*, 953 F.Supp. 1176 (D. Kan. 1996) (no abuse of discretion for denial of experimental chemotherapy).

Consistent with its standard operating policy, Blue Cross took affirmative steps to avoid any bias in reviewing Burton's appeal of the denial of benefits. Blue Cross engaged MES to obtain independent specialist reviews of the IMRT treatment. All of the independent reviewers concluded that IMRT treatment is experimental or investigative for ovarian and liver cancer. The compensation of Blue Cross employees administering Plan is not tied to their decisions. Similarly, the independent reviewers were not compensated based on the conclusions.

The court further finds that the plaintiff's claim for equitable relief under Count 2 of the Amended Complaint is not a proper remedy under 29 U.S.C § 1132(a)(1)(B) as alleged in Count II of the Amended Complaint. See *Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1876-77 (2011) (finding ERISA does not authorize district courts to reform health plans or engage in other equitable relief).

IT IS ACCORDINGLY ORDERED this 31st day of July, 2014, that the plaintiff's Motion  for Summary Judgment (Dkt. 64) and Motion to Strike (Dkt. 70) are denied; the defendant's Motion for Summary Judgment (Dkt. 66) is granted.


 s/ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE